**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.  )<br>)<br>JOE HOWARD PAYNE, )<br>)<br>   and )<br>)<br>BRUCE DWAYNE WINSTON, )<br>)<br>   Defendants. )<br>) | CRIMINAL NO. RDB-13-0639 |

...o0o...

**MOTION IN LIMINE TO ADMIT EXTRINSIC EVIDENCE PURSUANT TO
FED. R. EVID 404(b) AND INTRINSIC EVIDENCE OF UNCHARGED CONDUCT**

On June 3, 2013, law enforcement officers recovered approximately 20 kilograms of cocaine and $30,000 from a truck occupied by the defendants, Bruce Dwayne Winston and Joe Howard Payne, who were traveling on I-70 Westbound in Howard County. The defendants have insisted that they did not know that they were transporting drugs or money in their truck; and that they did not intentionally conspire with Jorge Herevia, their codefendant, or with any other person to distribute and possess with intent to distribute cocaine.

At the trial of this matter, which is scheduled to begin on July 21, 2014, the critical, issue will be the defendants' knowledge and intent with regard to the drugs and money in their truck. To meet its burden of proof on this issue, the government moves *in limine* for the admission of two categories of relevant, highly probative evidence:

*First,* the government moves under Federal Rule of Evidence 404(b) to admit evidence relating to a traffic stop and subsequent search of a pickup truck and horse trailer belonging to

Winston near Asheville, North Carolina in January 2010.  While searching the trailer, officers discovered 1,082 pounds of marijuana and approximately $1.1 million.  As discussed more fully below, this evidence is both relevant and necessary to the government's case, in that it substantially diminishes the likelihood that Winston and his co-conspirator, Payne, lacked knowledge of the cocaine and currency found in their vehicle approximately three and a half years later.  The evidence is also reliable, as one of the officers who searched the trailer, as well as a second officer who subsequently interviewed Winston, and potentially a third witness, will testify regarding these facts.  Finally, the evidence is not unfairly prejudicial.  It will be offered solely for a legitimate and necessary purpose (i.e., proving the defendants' mental state and *modus operandi*), and it will not incite the jury to engage in irrational behavior, particularly in light of the substantial intrinsic evidence suggesting the defendants' involvement in illegal drug trafficking.

*Second*, the government moves to admit *intrinsic* evidence that the defendants transported cocaine to Delaware during the fall of 2012.  Although this evidence falls several months outside the time period of the charged conspiracy, it is nonetheless intrinsic, as it provides necessary factual context for the defendants' unlawful conduct in May and June of 2013.  In the alternative, the evidence of uncharged conduct in Delaware is admissible under Rule 404(b), as discussed more fully below.

I.     **RELEVANT FACTUAL BACKGROUND**

The defendants, both natives of Arkansas, are professional couriers for a cocaine trafficking conspiracy based in Texas.  They are charged by indictment with two crimes: conspiracy to distribute and possess with intent to distribute more than five kilograms of cocaine,

in violation of 21 U.S.C. § 846 (count one); and possession with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1) (count two).  The conspiracy charged in count one is alleged to have taken place between May 2013 and November 12, 2013.

**A.  The Defendants' Alleged Conduct in This Case**

The full story of the defendants' involvement in drug trafficking has multiple layers.  The first, most directly relevant layer is the defendants' conduct during the time period of the charged conspiracy.  With regard to this time period, the government will prove at trial that in late May 2013, the defendants were paid to assist Jorge Herevia and others to transport as many as 50 kilograms of cocaine from Navasota, Texas to customers in multiple jurisdictions.  The defendants transported the cocaine in a white GMC truck, which bore the logo of a fictional energy company ("shaleentergy.com") and had previously been outfitted with a secret, aftermarket compartment.  The defendants drove the white GMC truck from Navasota to Memphis, where Herevia (and potentially others) delivered a large, multi-kilogram shipment of cocaine to a known drug trafficker (Customer #1).  The defendants then drove the truck to Baltimore, where Herevia delivered an additional quantity of cocaine to a second drug trafficker (Customer #2).

Following Herevia's delivery to Customer #2, the defendants returned to Arkansas.  Several days later, they were summoned to return to Baltimore.  They arrived in Baltimore on June 2, 2013, and they checked into a Holiday Inn near the Inner Harbor.  Later that day, an officer conducting surveillance observed the defendants meeting with Herevia in the hotel bar.  Additional officers observed the defendants' truck, which was registered to Winston and his wife, in the parking lot outside the hotel.

The following morning—June 3, 2013—officers observed Herevia leaving the Holiday Inn in the defendants' truck. The officers followed Herevia to a Wal-Mart in Randallstown, where he bought a heat sealer and several rolls of plastic wrap. Later that day, at approximately 10:50 a.m., additional officers observed Herevia returning to the Holiday Inn in the defendants' truck.

Approximately 15 minutes later, the defendants left the Holiday Inn, carrying the same bags that they brought with them when they checked into the hotel. The defendants got into the white GMC truck, and they exited the parking lot. Officers conducting surveillance followed the defendants out of Baltimore, onto I-695 north, and eventually onto I-70 West. They then contacted the Maryland State Police and advised them of the defendants' whereabouts.

At 11:50 a.m., a Maryland State Police officer initiated a directed traffic stop of the defendants' truck. Additional MSP officers, including a K-9 officer, arrived on the scene within minutes. At 11:55 a.m., the K-9 officer conducted a scan of the defendants' truck, which alerted positive for the presence of narcotics. The officers then searched the defendants' truck, and they discovered over 20 kilograms of cocaine, as well approximately $30,000, hidden in the secret compartment.[1] The officers seized the cocaine and currency, and they placed the defendants under arrest.

Both defendants made conflicting false exculpatory statements on the date of their arrest. During the course of the traffic stop itself, Payne told an officer that he and Winston had been

---

[1] In prior filings, the government had indicated that the officers discovered approximately 18 kilograms of cocaine inside the secret compartment. The government has since received the final report from the DEA Mid-Atlantic Laboratory, which reflects that the actual quantity is well over 20 kilograms.

working in New Holland, PA—where they had spent the previous evening at a Holiday Inn—and that they were on their way to Baltimore. Winston, by contrast, told a different officer that he and Payne had spent the previous night in Baltimore, and that they were on their way to New Holland to perform work on behalf of a company called "Shale Energy."[2]

Following his arrest, Winston waived his *Miranda* rights and agreed to be interviewed by law enforcement. (Payne told investigators that he wished to speak with a lawyer before making a statement). During his interview, Winston insisted that he worked for a Texas-based company called Shale Energy; that Herevia was his supervisor; and that he (Winston) was responsible for traveling to "job sites" and inspecting the hook-ups on natural gas lines. Winston further stated, however, that when he and Payne would report to "job sites," no one would be ready for them, and they would usually be turned away. Winston explained he and Payne had speculated that they were transporting large amounts of currency in between "job sites." He further stated that "you don't get paid to do nothing," and that he thought that he and Payne may have been involved in the drug trafficking business. Winston maintained throughout the interview that neither he nor Payne had knowledge of the cocaine and currency hidden in their truck.

### B. Intrinsic Evidence of Drug Trafficking in Delaware (Late 2012)

As noted previously, the conduct summarized above is but one layer of a much richer story that the government will seek to present at trial. The second layer concerns the defendants' transportation of cocaine to Delaware during the fall of 2012. It was during this time period that the defendants first began assisting Herevia and others in moving large quantities of cocaine from Texas to other jurisdictions.

---

[2] Both defendants were wearing shirts displaying "Shale" logos at the time of their arrest.

The evidence relating to Delaware is highly similar to the evidence relating to Baltimore. (The major difference, obviously, is that the defendants were not caught in Delaware with large quantities of cocaine and currency in their truck). As part of its case in chief, the government intends to prove—via witness testimony, hotel records, and potentially historical cell site information—that the defendants were paid to assist Herevia and others by transporting cocaine in a truck with a hidden compartment. On at least one occasion, the defendants stayed at a Holiday Inn, as they did in Baltimore several months later. When the defendants got to Delaware, Herevia delivered the cocaine that the defendants had transported in their truck to a known drug trafficker in the area (Customer #3).

**C. Extrinsic Evidence of Drug Trafficking in North Carolina (Early 2010)**

On January 28, 2010, North Carolina police officers stopped a 2004 Chevrolet pickup truck that was pulling a Featherlite horse trailer, both bearing Arkansas license plates. The truck was registered to Winston's wife, Kathy. The trailer was registered to Winston. During course of the traffic stop, the driver of the truck, Andrew Vanover—who later stated that he was an "employee" of Winston's—consented to a search of the trailer. Upon searching the trailer, officers discovered a secret compartment, hidden behind a false wall. Inside the secret compartment, the officers discovered 1,082 pounds of marijuana and approximately $1.1 million in U.S. currency.

During an interview following his arrest, Vanover told authorities that on January 25, 2010—three days prior to the traffic stop—Winston had told him to drive the truck and trailer from Batesville, Arkansas to Shelby, North Carolina by way of Interstate 85 to pick up a pair of mules. Several weeks later, however, authorities spoke to Winston when he arrived in North

Carolina to reclaim his truck. Although Winston acknowledged that Vanover was his "employee," he told investigators that he had not seen Vanover since prior to Christmas of 2009. Winston denied having knowledge of the marijuana or currency found in his trailer. Authorities ultimately declined to charge Winston with a crime.

## II. ARGUMENT

### A. The Extrinsic North Carolina Evidence is Admissible Under Rule 404(b).

Fed. R. Evid. 404(b) provides that evidence of "other crimes, wrongs, or acts" is not admissible to prove a defendant's character or propensity to commit a crime, but is admissible for any valid purpose, including to prove motive, intent, plan, knowledge, *modus operandi*, and absence of mistake. *See United States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009) (quoting Fed. R. Evid. 404(b)). Rule 404(b) is a rule of inclusion, "admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." *United States v. Young*, 248 F.3d 260, 271-72 (4th Cir. 2001) (internal quotation marks omitted).

For extrinsic evidence to be admissible under Rule 404(b), the proffered evidence must be (i) "relevant to an issue other than character," *e.g.*, knowledge, intent, *modus operandi*, or absence of mistake, *United States v. Siegel*, 536 F.3d 306, 317-18 (4th Cir. 2008) (internal quotation marks omitted); (ii) "necessary to prove an element of the crime charged," *United States v. Queen*, 132 F.3d 991, 995 (4th Cir. 1997), or to prove context, *see id*. at 998; and (iii) reliable. *Id*. at 995. In addition, "the probative value of the evidence must not be substantially outweighed by its prejudicial effect," which "involves a Rule 403 determination." *United States v. Lighty*, 616 F.3d 321, 352 (4th Cir. 2010).

7

i. The proffered evidence is relevant to multiple valid issues, including the defendants' knowledge, intent, and modus *operandi* with regard to the <u>cocaine and currency found in their truck</u>.

All relevant evidence is admissible, except as provided by the Constitution, by act of Congress, by the Federal Rules of Evidence, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Fed. R. Evid. 402. Evidence is relevant if it tends to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "The more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes." *Queen*, *supra*, 132 F.3d at 997.

Here, the evidence relating to the stop of Winston's truck and trailer in 2010 involves the very same act—the clandestine transportation of drugs and money—as the act being proved in this case. Evidence showing that a *different* vehicle belonging to Winston had a secret compartment that was used to transport drugs and money makes it substantially more likely that (a) Winston and Payne knew there was a trap inside their vehicle in this case; (b) Winston and Payne knew that they were transporting drugs and money in this case; and (c) Winston and Payne did not mistakenly believe that they were traveling to (or from) a job site on behalf of a nonexistent energy company. In short, evidence relating to the stop of Winston's truck and trailer in North Carolina clearly meets the low legal threshold of relevance. *See* Fed. R. Evid. 401; *United States v. Rawle*, 845 F. 2d 1244, 1247 n. 3 (4th Cir. 1988) (evidence is relevant if it is "sufficiently related to the charged offense"); *see also United States v. Hodge*, 354 F.3d 305, 312 (4th Cir. 2003) (evidence of prior drug transactions relevant to show knowledge of drug trade and intent to distribute cocaine found in Jeep).

ii. The proffered evidence is necessary, as required by Rule 404(b).

Evidence is necessary "where it is an essential part of the crimes on trial, or where it furnishes part of the context of the crime." *See*, *e.g.*, *United States v. Byers*, 649 F.3d 197, 209 (4th Cir. 2011); *see also United States v. Mark*, 943 F.2d 444, 448 (4th Cir. 1991). Here, in order to prove the defendants' guilt under 21 U.S.C. §§ 841 and 846, the government must prove their knowledge and intent beyond a reasonable doubt. *See United States v. Hall*, 551 F.3d 257, 267 n. 10 (4th Cir. 2009) (elements of possession with intent to distribute); *Mark*, *supra*, 943 F.3d at 228 (elements of conspiracy).

By pleading not guilty in this case, and by specifically asserting that they had no knowledge of the cocaine and currency in their truck, the defendants have placed their knowledge and intent squarely and directly in dispute. *See*, *e.g.*, *United States v. Sanchez*, 118 F.3d 192, 196 (4th Cir. 1997). As discussed above, whether the defendants knew that they were transporting drugs and money in their truck, and whether they intended to participate in a high-level cocaine trafficking conspiracy, are the key contested issues in this case. Thus, rather than being admitted for a collateral purpose, the proffered 404(b) evidence relating to the stop of Winston's truck and trailer is necessary—indeed, critical—to proving the defendants' mental state with regard to the drugs and money in their truck; and, similarly, to show that they were intentional, rather than unwitting, participants in the charged drug trafficking conspiracy. *See*, *e.g.*, *United States v. Cabrera-Beltran*, 660 F.3d 742, 755-56 (4th Cir. 2011) (citing *Sanchez*, 118 F.3d at 195); *see also Huddleston v. United States*, 485 U.S. 681, 685 (1988) ("Extrinsic acts evidence may be critical … especially when th[e] issue involved the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct.").

### iii. The proffered evidence is reliable.

Evidence is reliable if it has a sufficient factual basis that it could conceivably be credited by "a rational and properly instructed juror." *United States v. Bailey*, 990 F.2d 119, 123 (4th Cir. 1993). This requirement is not particularly onerous; indeed, it may be satisfied solely by the uncorroborated testimony of a cooperating witness. *See, e.g.*, *United States v. Hadaway*, 681 F.2d 214, 219 (4th Cir. 1982).

Here, the government seeks to offer credible testimony by two witnesses (at a minimum), including one of the officers who discovered the marijuana and currency in Winston's trailer; as well as a second officer who interviewed Winston when Winston went to North Carolina to pick up his truck.[3] This testimony, standing on its own, is more than sufficient to demonstrate that the search of Winston's trailer took place, and that Winston made subsequent statements during a voluntary interview with law enforcement. *Cf. United States v. Penniegraft*, 641 F.3d 566, 575 (4th Cir. 2011) ("[T]he 404(b) evidence was reliable as the arresting officer testified at trial.").

### iv. The proffered evidence will not result in undue prejudice.

The fact that evidence is prejudicial or harmful to a defendant's case is not a basis for exclusion so long as the evidence is relevant and probative. *See*, *e.g.*, *United States v. Grimmond*, 137 F.3d 823, 833 (4th Cir. 1988); *Siegel*, *supra*, 536 F.3d at 319 ("all evidence suggesting guilt is prejudicial to a defendant … that kind of general prejudice, however, is not enough to warrant exclusion of otherwise relevant, admissible evidence"); *cf. United States v. Bradley*, 145 F.3d 889, 893 (7th Cir. 1998) ("To the extent that the defendant perceives Rule 403

---

[3] The government may also call the driver of the truck, if that person is available; as well as a witness from the Arkansas Department of Motor Vehicles, if necessary.

as a tool designed 'to permit the Court to "even out" the weight of the evidence, to mitigate a crime, or to make a contest where there is little or none,' he is mistaken."). Evidence is subject to exclusion under Rule 403 only where it is *unfairly* prejudicial—that is, only where the evidence is of such a character that is results in an undue tendency to suggest decision on an improper basis." Fed. R. Evid. 403, Advisory Committee Notes to 1972 Amendments; *see also Queen*, *supra*, 132 F.3d at 997 ("the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process").

Here, the proffered 404(b) evidence will not suggest decision on an improper basis. Rather, the evidence will be offered for a limited and legitimate purpose: to show the defendants' knowledge, intent, and *modus operandi* with regard to the cocaine and currency discovered in their vehicle. Further, where there is considerable intrinsic evidence that the defendants were found in possession of a massive quantity of cocaine—as there is in this case—the introduction of additional (and necessary) extrinsic evidence will not incite the jury to engage in irrational behavior, any more than the intrinsic evidence already would . *See*, *e.g.*, *Hodge*, *supra*, 312 F.3d at 312 ("In light of the substantial [intrinsic] evidence of drug activity found in Hodge's apartment and Jeep, and the evidence that Hodge used at least two aliases, we conclude that there was no genuine risk that the testimony regarding the 1996 controlled drug purchases would excite the jury to irrational behavior."); *United States v. Branch*, 537 F.3d 328, 342 (4th Cir. 2008) ("The government's considerable [intrinsic] evidence of Branch's distribution of cocaine base in September 2004 alleviated the risk that the jury might react irrationally to the evidence of drug possession from 2001.").

Further, to address any danger of unfair prejudice, the Court may give an extensive limiting instruction, informing the jury that it may only consider the proffered evidence for appropriate purposes. The Fourth Circuit has expressed great confidence in the efficacy of such instructions. *See*, *e.g.*, *United States v. Mohr*, 318 F.3d 613, 620 (4th Cir. 2003) ("a careful limiting instruction significantly ameliorated any possible unfair prejudice"); *United States v. Powers*, 59 F.3d 1460, 1468 (4th Cir. 1995) (noting that cautionary or limiting instructions generally obviate prejudice).

### B. The Intrinsic Delaware Evidence is Relevant and Admissible.

"Evidence of a defendant's involvement in drug transactions prior to the dates charged in a conspiracy is also admissible as substantive evidence of a defendant's guilt." *United States v. Lowery*, 2008 WL 2620198 at * 6 (4th Cir. Jul. 1, 2008); *see also United States v. Hudson*, 2012 WL 207722 at * 2 (4th Cir. Jan. 23, 2012) ("[N]ot all pre-conspiracy drug transactions need to be treated as extrinsic to the charged conspiracy."). As the Fourth Circuit has explained, "evidence of uncharged conduct is not considered 'other crimes' evidence"—and is therefore not subject to a Rule 404(b) analysis—"if it arose out of the same … series of transactions as the charged offense, … or if it is necessary to complete the story of the crime [on] trial." *United States v. Kennedy*, 32 F.3d 876, 885 (4th Cir. 1994) (citing *United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989)).

Evidence may be necessary to complete the story of the crime on trial where, for example, it shows how the participants in an alleged conspiracy "first started working together, what roles they had in the conspiracy and how typical transactions were first executed." *Hudson*, *supra*, 2012 WL 20722 at *2 (citations omitted); *see also United States v. Nolberto Pena*, 200

12

WL 541087 at * 6 (4th Cir. Apr. 27, 2000) ("[T]he previous drug distribution activities between Crumity and Ward provided the context for the charged conspiracy by revealing important background information about Ward and explaining how Ward and Crumity came to be engaged in distribution activities during the time frame of the indictment."); *see also United States v. Lokey*, 945 F.2d 825, 834 (5th Cir. 1991) (evidence of drug deals consummated prior to the charged conspiracy held not to be extrinsic because it showed how the conspiracy came about, how it was structured and how the defendant became a member).

Here, evidence regarding the defendants' trips to Delaware during the fall of 2012 will enable the jury to better understand the nature of the charged conspiracy. The Delaware evidence will show, first, when and how Herevia, Winston, and Payne first began working together; and second, the methods they employed in transporting cocaine from Texas to Delaware—the same methods they later employed to transport cocaine from Texas to Maryland. Under the authorities discussed above, this type of evidence is not extrinsic, "other acts" evidence; rather, it is "predicate evidence necessary to provide context to the [alleged] drug distribution scheme that took place within the charged time frame." *See Kennedy*, *supra*, 32 F.3d at 885-86; citing *Mark*, *supra*, 943 F.2d at 448 (holding that evidence of uncharged criminal activity is admissible "where it 'furnishes part of the context of the crime' ").[4]

---

[4] Assuming, *arguendo*, that the Delaware evidence is *extrinsic* (which should not be the case under *Kennedy* and the cases cited above), it is nonetheless admissible under Rule 404(b). The evidence is both relevant and necessary, in that it tends to show that both Winston and Payne had knowledge of the drugs and money concealed in their truck last June. The evidence is also reliable, as the anticipated witness testimony (which would likely be sufficient on its own under *Hadaway*, *supra*, 681 F.2d at 219) will be corroborated by hotel records showing that Winston and Payne did in fact travel from Arkansas to Delaware, and that they stayed at the same Holiday Inn as their coconspirator, Herevia, during the relevant time period. Finally, the Delaware

13

*   *   *   *   *   *   *

For the foregoing reasons, the Court should grant the government's motion to admit extrinsic evidence pursuant to Fed. R. Evid. 404(b) and intrinsic evidence of uncharged conduct.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

By: ___/s/_____
Peter J. Martinez
David I. Sharfstein
Assistant United States Attorneys
36 South Charles Street
Fourth Floor
Baltimore, Maryland  21201
(410) 209-4984

---

evidence is not unduly prejudicial, as it will be offered for legitimate a purpose (i.e., to show the defendants' knowledge, intent, and *modus operandi*), and will not incite the jury to irrational behavior, particularly in light of the substantial intrinsic evidence that the Defendants were involved in drug trafficking.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of June, 2014 , I caused a copy of the foregoing Response to be served on defense counsel via the Court's electronic filing system.

/s/
Peter J. Martinez
Assistant United States Attorney