IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

                                      CRIMINAL NO.: RDB-13-639

V.

JORGE ALAN HEREVIA, *et al.*,

DEFENDANTS.

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

In this case, Defendants Bruce Winston and Joe Payne are charged with (1) conspiracy to distribute and possess with intent to distribute cocaine and (2) possession with intent to distribute cocaine. The Defendants have filed a number of pre-trial motions that remain pending at this time, including Defendant Winston's Motion to Suppress Tangible and Derivative Evidence (ECF No. 38), Defendant Payne's Motion to Sever (ECF No. 40), Defendant Payne's Motion to Suppress Search and Statement (ECF No. 44), Defendant Winston's Motion to Suppress Evidence Taken from the Defendant's Cellular Phone (ECF No. 72), Defendant Payne's Motion to Adopt Motion of Other Defendant and Supplement Motion to Suppress Evidence from Cell Phone (ECF No. 75), and Defendant Winston's Motion to Suppress Statements (ECF No. 95). Additionally, the Government filed a Motion *in Limine* to Admit Rule 404(b) Evidence (ECF No. 67) pertaining to a search and seizure of a trailer owned by Defendant Winston in North Carolina in 2010.[1] The parties' submissions

---

[1] The Docket reflects that Defendant Payne's Motion for Notice of 404(b) Evidence (ECF No. 41) is still pending. However, this Court noted that the motion was granted as mooted in open court on September 19, 2014.

1

have been reviewed, and this Court held a hearing on August 25 and September 18, 2014.[2] While this Court resolved some additional pending motions during the hearing, it withheld a ruling on the motions listed above. For the reasons that follow, this Court will order accordingly:

- Defendant Winston's Motion to Suppress Tangible and Derivative Evidence (ECF No. 38) is DENIED;

- Defendant Payne's Motion to Sever (ECF No. 40) is DENIED but the Government is prohibited from using Defendant Winston's statement concerning involvement in the drug trafficking business at trial;

- Defendant Payne's Motion to Suppress Search and Statement (ECF No. 44) is DENIED;

- Defendant Winston's Motion to Suppress Evidence Taken from the Defendant's Cellular Phone (ECF No. 72) is DENIED;

- Defendant Payne's Motion to Adopt Motion of Other Defendant and Supplement Motion to Suppress Evidence from Cell Phone (ECF No. 75) is DENIED;

- Defendant Winston's Motion to Suppress Statements (ECF No. 95) is DENIED; and

- The Government's Motion *in Limine* to Admit Rule 404(b) Evidence (ECF No. 67) is GRANTED.

## FINDINGS OF FACT

---

[2] In addition to testimony and exhibits being presented, the Government and the Defendants agreed as to certain underlying facts in this case. Accordingly, this Court's findings of fact are based upon the evidence presented at the hearing and the facts agreed upon by the Government and the Defendants.

Defendants Joe Howard Payne and Bruce Dwayne Winston are charged with conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846 (Count One); and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count Two). The charges developed out of a major investigation of a cocaine trafficking conspiracy based in Texas. As part of that investigation, law enforcement agents seized approximately 18 kilograms of cocaine from a truck in which Payne and Winston were traveling on I-70 in Howard County, Maryland on June 3, 2013.

The government's investigation began in January 2013 when a cooperating defendant informed law enforcement that s/he was purchasing large amounts of cocaine from a Mexican source of supply. The cooperating defendant explained that, on more than one occasion, an individual working for the Mexican supplier, whom the cooperating defendant identified as "George," would deliver cocaine to Delaware in a pickup truck with a hidden compartment. The cooperating defendant recounted that the individual who delivered the cocaine would fly to Philadelphia and stay at a Holiday Inn in Harrington, Delaware. During a subsequent meeting with law enforcement, the cooperating defendant identified the individual who delivered the cocaine as Jorge Herevia.

Following the cooperating defendant's identification of Herevia, the DEA determined that Herevia had stayed at the Holiday Inn in Harrington, Delaware on multiple occasions in September 2012. On one of those occasions, Herevia paid for two rooms at the hotel, the second of which was occupied by Winston. Law enforcement is aware that in January 2010, investigators stopped a truck registered to Winston's wife (and driven by an individual who was an employee of Winston) in Asheville, North Carolina. During the

course of the traffic stop, investigators recovered approximately $1 million and 1,000 pounds of marijuana from a hidden compartment in a trailer attached to the truck.

On May 31, 2013, the DEA sought information relating to the Bank of America account used by Herevia while staying at the Holiday Inn in Harrington, Delaware. Using credit card information, the DEA discovered that Herevia was staying at a Holiday Inn in Baltimore's Inner Harbor, and that Herevia had booked his hotel room on May 26, 2013. Law enforcement officers from multiple agencies, including the DEA, the FBI, and the Wicomico County Narcotics Task Force, subsequently established surveillance in and around the Holiday Inn.

On June 2, 2013, officers conducting surveillance observed two white males, whom they later identified as Winston and Payne, checking into the Holiday Inn. At least one officer saw Winston and Payne meet with Herevia that day. During the meeting, the officer overheard Winston and Payne stating that they were from Arkansas. Officers subsequently observed a white GMC truck, bearing Arkansas registration 588OCX, in the parking lot outside the hotel that was registered to Winston and his wife.

On the morning of June 3, 2013, Herevia drove the white GMC truck from the Holiday Inn to a Wal-Mart in Randallstown, Maryland. Officers followed him and observed Herevia leaving the Wal-Mart carrying what appeared to be a heat sealer.[3] Herevia then returned to the Holiday Inn and parked the white GMC truck in the lot outside the hotel.

Approximately 15 minutes later, Winston and Payne left the Holiday Inn, carrying the same bags that they brought with them when they checked into the hotel. Winston and

---

[3] Pursuant to a subpoena, investigators later determined that Herevia did in fact purchase a heat sealer and several rolls of plastic wrap.

4

Payne got into the white GMC truck and drove away. Officers followed Winston and Payne from the hotel to I-70 West.

As Winston and Payne merged onto I-70 West, a member of the surveillance team contacted the Maryland State Police and explained that investigators believed Winston and Payne were transporting narcotics in their truck. The surveillance team member also identified the white GMC truck in which Winston and Payne were traveling and provided the truck's current location. This information was conveyed to Maryland State Police Sergeant Christopher ("Mike") Conner, who in turn notified Maryland State Police Trooper Ryan McNeely, an on-duty officer working in the area where the truck was traveling. Conner contacted a canine officer to indicate that a traffic stop was imminent.

At approximately 11:47 a.m., the white GMC truck passed by McNeely as he was sitting in his vehicle on a service road in the median of the highway.[4] McNeely then exited the median and followed the truck as it continued along the highway. McNeely then initiated a traffic stop of the white GMC truck.

During the course of the traffic stop, McNeely and his colleagues, including Sgt. Conner, noticed that Payne's hands were visibly shaking, and that Payne and Winston gave conflicting stories about where they had started their trip. (Payne stated that he and Winston were coming from New Holland, PA, where they had been working and had spent the previous night at a Holiday Inn. Winston, by contrast, stated that he and Payne were coming from Baltimore, where they had gone to a strip club the previous evening, and that he and

---

[4] McNeely asserts that he noticed that the truck slowed significantly as it passed by his location, and he measured the truck's speed at 4 miles per hour above the speed limit. He also testified that he later observed the truck change lanes abruptly without using a turn signal

5

Payne were traveling to—rather than coming from—New Holland, PA). The officers further observed that the license plate number on the white GMC truck did not match the license plate number on the vehicle's registration card, and that the license plate number on the truck was not on file with the Arkansas Department of Motor Vehicles.

Approximately five minutes into the traffic stop—at 11:55 a.m.—Maryland State Police Senior Trooper Connolly conducted a canine scan of the white GMC truck. The result of the scan was positive for the presence of narcotics. Officers subsequently searched the truck, and they discovered approximately 18 kilograms of cocaine hidden in a secret compartment. The officers seized the cocaine, as well as approximately $30,000 in U.S. currency and two cellular telephones.

Defendants Winston and Payne were placed under arrest and transported to the Maryland State Police Barrack in Waterloo. At the barrack, the officers advised Winston and Payne of their *Miranda* rights. Payne told investigators that he wished to speak with a lawyer before answering any questions. Winston, by contrast, agreed to be interviewed by investigators and made various statements to the interviewing officers.

ANALYSIS

The following motions are ripe for this Court's decision: Winston's Motion to Suppress Tangible and Derivative Evidence (ECF No. 38); Payne's Motion to Suppress Search and Statement (ECF No. 44); Payne's Motion to Sever (ECF No. 40); the Government's Motion *in Limine* to Admit Extrinsic Evidence Pursuant to Rule 404(b) and

Intrinsic Evidence of Uncharged Conduct (ECF No. 67); [5] Payne's Motion to Adopt and Supplement Motion to Suppress Evidence Taken from the Defendant's Cellular Phone (ECF No. 75); and Winston's Motion to Suppress Statements (ECF No. 95).

### I.   Motion to Sever (ECF No. 40)

Defendant Payne has filed a Motion to Sever, claiming a violation of his Sixth Amendment rights under *Bruton v. United States*, 391 U.S. 123 (1968), and further arguing that severance is appropriate under the Federal Rules of Criminal Procedure.

#### A.  Defendant's Confrontation Rights and *Bruton*

The Sixth Amendment guarantees a criminal defendant the right to confront and cross-examine the witnesses against him. Under *Bruton v. United States*, 391 U.S. 123 (1968), this Sixth Amendment right is violated where the government offers the confession of a co-defendant that inculpates the defendant and the co-defendant does not take the stand and cannot be cross-examined. *Id.* at 135-36.

In this case, there are two particular statements from Winston's post-arrest interview at issue:

- First, Winston told investigators that "he and Payne have had discussions and they believed they were transporting large amounts of US currency to or from the job sites."
- Second, Winston said "he speculated what he and Payne were doing was OK, but still thought he and Payne was [sic] involved in the drug trafficking business."

Govt.'s Consol. Resp. 10, ECF No. 54. The first of these does not appear to pose any *Bruton* problem because the statement is exculpatory; therefore, the statement is admissible.[6]

---

[5] Payne's Motion Requesting Notice of Rule 404(b) Evidence to Be Used at Trial (ECF No. 41) was granted as moot for the reasons stated on the record at the hearing.

7

With respect to the second statement, the Government has proposed the following redaction: "Winston speculated that what he [redaction] [was] doing was OK, but still thought he [redaction] was involved in the drug trafficking business." Govt. Consol. Resp. 11 (modifications in original). When taken as literally written, however, the statement still poses a *Bruton* problem under *Gray v. Maryland*, 523 U.S. 185 (1998) because the statement still suggests the existence of another individual. *See Gray*, 523 U.S. at 192 ("Redactions that simply replace a name with an obvious blank space or a word such as 'deleted' or a symbol or other similarly obvious indications of alteration, however, leave statements that, considered as a class, so closely resemble *Bruton*'s unredacted statements that, in our view, the law must require the same result."). Even if the statement is redacted further to remove any sign of another individual or change to the statement,[7] this Court would find a violation of *Bruton* in light of the complications caused by the willful blindness instruction that the Government has indicated that it will seek in this case. Rather than ordering separate trials, however, this Court will simply rule that the statement is inadmissible at a joint trial as the Government has indicated that it will proceed with a joint trial even without the statement. *See* ECF No. 155.

### B. Rules 8 and 14 of the Federal Rules of Criminal Procedure

With respect to Defendant Payne's rule-based argument, Rules 8 and 14 of the Federal Rules of Criminal Procedure guide this Court's analysis. Rule 8(b) states:

---

[6] In his "Supplement to Motions Filed," Defendant Payne identifies two additional statements. The argument at the hearing did not significantly address these statements and, irregardless, this Court does not find them to be sufficiently inculpating to raise to the level of a *Bruton* violation.

[7] Indeed, the Government's letter submitted September 22, 2014 (ECF No. 155) suggests that the Government seeks only the following construction: "Winston said 'he speculated what he was doing was OK, but still thought he was involved in the drug trafficking business.'"

8

> (b) Joinder of Defendants. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Meanwhile, Rule 14 states:

> (a) Relief. If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Prejudice arises when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

Defendant Payne's main contention is that he will be prejudiced by juror confusion arising out of the varying amounts of evidence against the two Defendants. However, "[a] defendant is not entitled to severance merely because separate trials would more likely result in acquittal, or because the evidence against one defendant is not as strong as that against the other." *United States v. Strickland*, 245 F.3d 368, 384 (4th Cir. 2001) (quoting *United States v. Akinkoye*, 185 F.3d 192, 197 (4th Cir. 1999)). Accordingly, because Defendant Payne has also failed to identify a specific trial right that has been compromised absent the already excluded statement of Defendant Payne, his motion to sever will be denied. Moreover, to the extent any prejudice to Defendant Payne might arise, this Court finds that proper limiting instructions will cure such prejudice. *See United States v. LaRouche*, 896 F.2d 815, 831 (4th Cir. 1990).

**II.     The Traffic Stop & the Motions to Suppress Tangible Evidence (ECF Nos. 38 & 44)**

Defendants have challenged Trooper McNeely's stop of the white GMC truck driven by Defendants.  A routine traffic stop must be limited in time and scope absent reasonable suspicion of criminal activity.  *See, e.g., United States v. Brugal*, 209 F.3d 353, 358 (4th Cir. 2000) (en banc); *United States v. Rusher*, 966 F.2d 868, 876-77 (4th Cir. 1992).  In assessing the stop, this Court must first determine the basis for Trooper McNeely's actions.  The Government initially argued that Trooper McNeely had an independent basis for making this stop based upon two observations allegedly made by Trooper McNeely: first, that the truck was traveling 69 m.p.h. in a 65 m.p.h. zone; and, second, that the truck made an abrupt lane change without using a turn signal.  However, at the hearing, Trooper McNeely testified that, due to the directive issued to him to stop the truck, he would have stopped the Defendants regardless of whether a traffic violation occurred.  After reviewing the evidence from the hearing, this Court concludes that Trooper McNeely's stop of the truck was pretextual.

Nevertheless, the Government argues that the stop of the white truck complied with the dictates of the Fourth Amendment because the collective knowledge doctrine imputes the knowledge of the drug task force that ordered the stop to the Maryland State Police.  In *United States v. Massenburg*, 654 F.3d 480 (4th Cir. 2011), the United States Court of Appeals for the Fourth Circuit explained the collective knowledge doctrine: "when an officer acts on an instruction from another officer, the act is justified if the instructing officer had sufficient information to justify taking such action herself; in this very limited sense, the instructing officer's knowledge is imputed to the acting officer."  *Id.* at 492.  The court, however,

provided an important clarification, noting that the doctrine "simply directs us to substitute the knowledge of the *instructive officer or officers* for the knowledge of the *acting officer*; it does not permit us to aggregate bits and pieces of information from among myriad officers, nor does it apply outside the context of communicated alerts or instructions." *Id.*

Thus, the preliminary question is whether the drug task force had reasonable suspicion to make an investigatory stop. Reasonable suspicion exists where an officer can point to "specific and articulable facts, which, taken together with rational inferences from those facts," establish a reasonable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Here, the DEA, along with other members of the drug task force from other agencies, had conducted a lengthy investigation. A cooperating defendant had informed the drug task force of an imminent drug transaction. Officers from the drug task force observed the Defendants meet with Herevia at a hotel in Baltimore, and saw them leave the hotel with bags. In light of the facts known to the drug task force at the time, this Court finds that there was reasonable suspicion to conduct an investigatory stop.

Next, this Court must determine whether the directive from the drug task force to the Maryland State Police complies with the direct of *Massenburg*. The evidence at the hearing indicated that the drug task force directed the Maryland State Police to conduct a stop of the white GMC truck. As noted above, the drug task force had the requisite reasonable suspicion to make such a stop, but they requested that the Maryland State Police wait for an independent basis to pull over the truck in order to protect the confidentiality of their investigation. Thus, regardless of whether a traffic violation did occur or of the alleged "suspicious" activity observed during the stop itself, the stop was permissible under the

Fourth Amendment because the instructing agency—the drug task force—had knowledge of facts giving rise to reasonable suspicion; there was no aggregation of suspicious behavior that would give rise to a constitutional issue under *Massenburg*. Accordingly, the directed stop was permissible notwithstanding the fact that the stated reason for Trooper McNeely's stop was pretextual.

Moreover, after initiating the stop, the Maryland State Troopers remained inside the confines of what is permissible under the Fourth Amendment. During a *Terry* stop, an "officer may inquire into matters unrelated to the justification for the traffic stop, and may take other actions that do not constitute searches within the meaning of the Fourth Amendment, such as conducting a dog-sniff of the vehicle, but again only so long as those inquiries or other actions do not measurably extend the duration of the stop." *United States v. Vaughan*, 700 F.3d 705, 710 (4th Cir. 2012) (internal citations, quotation marks, and alterations omitted). In this case, the stop was of very limited duration and of reasonable scope.

Finally, by the time the troopers actually searched the truck, they had probable cause to conduct a warrantless search pursuant to the automobile exception to the Fourth Amendment. The troopers conducted a canine sniff that indicated the presence of drugs, and the troopers had observed the two Defendants' nervous behavior. In addition, they had noticed that the Defendants' statements did not match and that the license plate on the truck was not on file with the Arkansas Department of Motor Vehicles. Under these facts, the troopers certainly had probable cause to conduct the search.

III.  **Statements Made at the Scene During the Stop and Prior to the Search and Arrest**

Defendant Payne has also moved to suppress his statements at the scene during the stop. However, because this Court has concluded that the stop complied with the Fourth Amendment, there is no reason to suppress those statements and they will be admissible. Additionally, all of the statements at issue were made during the initial stop and prior to the canine sniff and subsequent arrest of Defendant Payne. Therefore, Defendant Payne was not in custody for purposes of *Miranda* and his statements are admissible. *See Maryland v. Shatzer*, 559 U.S. 98, 113 (2010) ("[T]he temporary and relatively nonthreatening detention involved in a traffic stop does not constitute *Miranda* custody." (citations omitted)).

### IV. Motion to Suppress Statements Made by Defendant Winston While in Custody (ECF No. 95)

Defendant Winston argues that his statements to Maryland State Police Officers and DEA Agents should be suppressed because they were obtained in violation of his Fifth and Sixth Amendment rights. Specifically, Defendant Winston alleges that the did not knowingly and voluntarily waive his *Miranda* rights when he was initially questioned and that he was later questioned again without being re-Mirandized. In the Fourth Circuit, however, [a] suspect impliedly waives his *Miranda* rights when he acknowledges that he understands the Miranda warning and then subsequently is willing to answer questions." *United States v. Umana*, 750 F.3d 320, 344 (4th Cir. 2000) (citing *United States v. Frankson*, 83 F.3d 79, 82 (4th Cir. 1996)). The testimony at the hearing indicated that Defendant Winston was read his rights, that Defendant Winston acknowledged that he understood those rights; and that Defendant Winston subsequently began answering questions. Accordingly, this Court finds that Defendant Winston waived his *Miranda* rights.

13

With respect to the subsequent re-questioning, it is also clear that Defendant Winston's rights have not been violated. "Courts have consistently upheld the integrity of Miranda warnings even in cases where 'several hours' have elapsed between the reading of the warning and the interrogation." *United States v. Frankson*, 83 F.3d 79, 83 (4th Cir. 1996). In this case, Defendant Winston was initially read his rights and began answering questions. After the interview was terminated, Defendant Winston was walked back to his cell. At that time, he indicated that he was willing to continue answering questions provided that different officers were involved. Accordingly, the interview continued some five minutes later. Under these facts, there was no violation of Defendant Winston's rights and the Motion to Suppress Statements (ECF No. 95) will be denied.

### V.     Motions to Suppress Defendants' Cell Phone Data (ECF Nos. 72 & 75)

Both Defendants have moved to suppress the data recovered from their phones including historical cell site data. *See* ECF Nos. 72, 75. In this case, the Government seized the Defendants' cell phones at the time of their arrest. Thereafter, the Government obtained a warrant to examine the content of the Defendants' cell phones. Later, the Government also obtained an order authorizing the disclosure of historical cell site data pursuant to the Stored Communications Act, 18 U.S.C. § 2703. *See* ECF No. 94-2.

In *Riley v. California*, 134 S. Ct. 2473 (2014), the United States Supreme Court held that law enforcement officers must obtain a warrant before searching the contents of an arrestee's cell phone. Citing to *Riley*, the Defendants have challenged both the initial seizure of their cell phones as well as the adequacy of the warrant permitting the search of the contents of the phones. With respect to the initial seizure, it is clear that the Government

14

was entitled to secure the phones. *Cf. Riley*, 134 S. Ct. at 2486 (noting the defendants' "sensible concession" that law enforcement agents could have seized and secured their cell phones while seeking a warrant).

Defendants next challenge the adequacy of the warrant; Defendant Payne argues there was insufficient probable cause for the issuance of a warrant, and both Defendants challenge the particularity and specificity of the warrant. In assessing probable cause, this Court must afford great deference to the initial judicial officer's determination. *United States v. Henry*, 673 F.3d 285, 289-90 (4th Cir. 2012). This Court reviews the known facts and circumstances and determines whether, based upon a common sense determination, there is a fair probability that evidence of a crime will be found. *See, e.g., United States v. Wellman*, 663 F.3d 224, 228 (4th Cir. 2011). The affidavit explained the facts surrounding the investigation and discovery of drugs in the truck and noted that, through the affiant's law enforcement training, knowledge, and experience with the drug trade, drug traffickers often communicate about their business through cell phones. The Court notes that the Government has identified several analogous cases, including *United States v. Eiland*, 2006 WL 516743, at *12 (D.D.C. Mar. 2, 2006); meanwhile, the Defendants have provided no specific case law (other than citations for basic and generic principles) to support their position. In light of the totality of the circumstances and the case law in support, this Court finds that there was probable cause to support the issuance of the warrant.

Finally, this Court turns to the Defendants' particularity arguments with respect to the historical cell site location data. As previously noted by this Court, there is no reasonable expectation of privacy in such data, which is transmitted to and collected by cell phone

15

service purveyors in the ordinary course of business. *See United States v. Graham*, 846 F. Supp. 2d 384, 389 (D. Md. 2012).[8] Moreover, the data was not obtained through the original warrant for the contents of the phones; instead, the Government obtained an order signed by Magistrate Judge Timothy Sullivan pursuant to the Stored Communications Act, 18 U.S.C. § 2703 that authorized the disclosure of historical cell site information from the Defendants' telecommunications providers. *See* ECF No. 94-2. Thus, the warrant was not the operative document with respect to this data, and there is no indication that Judge Sullivan's order was in any way problematic.

Because the Government legally seized the Defendants' cell phones, obtained a warrant supported by probable cause to search the cell phones, and obtained a § 2703 order before collecting the historical cell site location data, the motion to suppress with respect to the cell phone-related data will be denied.

### VI. Government's Motion to Admit Rule 404(b) Evidence (ECF No. 67)

The Government seeks to admit evidence related to the discovery of large amounts of marijuana in a trailer owned by Winston and being driven by an employee of Winston in January 2010.[9] Rule 404(b) prohibits evidence of other crimes, wrongs, or acts to prove a defendant's character or propensity to commit a crime, but it may be admissible for other purposes, such as proof of knowledge, intent, or a defendant's *modus operandi*. *See* Fed. R. Evid. 404(b). "To be admissible under Rule 404(b), evidence must be (1) relevant to an issue

---

[8] *United States v. Graham* is currently on appeal to the Fourth Circuit and has been pending before that Court for nearly two years. In light of the fact that the Fourth Circuit has yet to provide its guidance on the subject, this Court comes to the same conclusion that it did in *Graham*.

[9] The Government also seeks to introduce evidence related to the Defendants' involvement in transportation of cocaine to Delaware in the fall of 2012, prior to the charged time of the conspiracy. The Defendants have not sought to challenge that point. *See* Def. Winston's Opp'n 1 n.1, ECF No. 83.

other than character; (2) necessary; and (3) reliable." *United States v. Siegel*, 536 F.3d 306, 317 (4th Cir. 2008) (internal quotation marks omitted). Additionally, evidence should be excluded under Rule 404(b) if its probative value is substantially outweighed by its unfair prejudice to the defendant. *United States v. Johnson*, 617 F.3d 286, 296–97 (4th Cir. 2010).

Evidence of the 2010 North Carolina stop is relevant to the case here, as both this case and that prior incident involved the transportation of contraband and cash in a secret compartment. Intent and knowledge are main issues in this case, and the evidence of the North Carolina stop goes to these issues. In light of the fact that the Defendant Winston will argue the issue of knowledge and intent, the evidence is necessary in this case. The evidence is also reliable, as the Government has offered at least one—and possibly several—witnesses to testify about the issue, including officers involved with investigating the incident. Finally, this Court finds that any potential prejudice to Defendant Winston does not substantially outweigh its probative value. Accordingly, the evidence is admissible as to Defendant Winston. However, the evidence is, of course, not admissible as to Defendant Payne, and the jury will be instructed as such. *See United States v. Peterson*, 244 F.3d 385, 395 (5th Cir. 2001) (suggesting clear instruction regarding consideration of Rule 404(b) evidence only as to relevant actor is appropriate but refusing to find reversible error where specific instruction was not given).[10]

## CONCLUSION

For the reasons stated above, this Court will order as follows:

---

[10] In his "Response to Government's Reply in Support of Motion in Limine to Admit Extrinsic Evidence Pursuant to Fed. R. Evid. 404(b)" (ECF No. 105), Defendant Payne suggests that this extrinsic evidence is another reason for severance of his trial. With proper jury instruction, this Court does not find that the potential prejudice to Payne warrants a separate trial. *Cf. United States v. Peterson*, 244 F.3d 385, 395 (5th Cir. 2001).

- Defendant Winston's Motion to Suppress Tangible and Derivative Evidence (ECF No. 38) is DENIED;

- Defendant Payne's Motion to Sever (ECF No. 40) is DENIED but the Government is prohibited from using Defendant Winston's statement concerning involvement in the drug trafficking business at trial;

- Defendant Payne's Motion to Suppress Search and Statement (ECF No. 44) is DENIED;

- Defendant Winston's Motion to Suppress Evidence Taken from the Defendant's Cellular Phone (ECF No. 72) is DENIED;

- Defendant Payne's Motion to Adopt Motion of Other Defendant and Supplement Motion to Suppress Evidence from Cell Phone (ECF No. 75) is DENIED;

- Defendant Winston's Motion to Suppress Statements (ECF No. 95) is DENIED; and

- The Government's Motion *in Limine* to Admit Rule 404(b) Evidence (ECF No. 67) is GRANTED.

A separate order follows.

Dated: September 23, 2014                    _____/s/_____
                                             Richard D. Bennett
                                             United States District Judge